**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| USAA Casualty Insurance Company, | No.  CV-22-01512-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Nuvo Residential LLC, et al., | |
| Defendants. | |

Before the Court is Defendant Hydro Systems International, Inc.'s ("Defendant Hydro") Motion for Attorneys' Fees and Expert Costs against Co-Defendant and Cross Claimant Nuvo Residential LLC ("Defendant Nuvo") (Doc. 96), Defendant Nuvo's Response (Doc. 100), and Defendant Hydro's Reply (Doc. 102). For the following reasons, the Court will grant Defendant Hydro's Motion for fees in part as modified and deny as to Defendant Hydro's request for expert costs.

## I.     BACKGROUND

This case arises out of an incident in which a water softener system owned by Patrick Maley failed, flooded his residence, and caused water damage. (Doc. 79 at 2). Maley was insured by Plaintiff USAA Casualty Insurance Company, which filed this subrogation action against Defendants. (Doc. 11). On October 4, 2022, Plaintiff filed its Amended Complaint against Defendants Nuvo and Hydro, bringing strict products liability and negligence claims. (*Id.* at 1). Plaintiff alleges the water damage was due to a failure of Defendant Nuvo's H2O water softener and its component parts. (*Id.* at 4–5). Specifically,

1    Plaintiff alleges the water softener system experienced a "crack in the head," which is one

2    of the system's three core component parts. (Docs. 79 at 3; 11 at 5–6). Defendant Nuvo

3    allegedly purchased the head and another component part, the canister, (collectively

4    referred to as "housings") from Defendant Hydro, a distributor of water treatment products.

5    (Doc. 79 at 3). Defendant Nuvo custom designs the third core component part, the

6    cartridge, and outsources its manufacturing to various companies. (*Id.* at 3–4).

7         On November 8, 2022, Defendant Nuvo filed a cross-claim against Defendant

8    Hydro, seeking indemnity and reimbursement of attorneys' fees and costs from Defendant

9    Hydro in this matter pursuant to A.R.S. § 12-684 and common law. (Doc. 20 at 6).

10   Defendant Nuvo alleged that Defendant Hydro designed and manufactured the head of the

11   housing, which Plaintiff alleged was defective and caused the water loss, and that Nuvo

12   had no knowledge or hand in altering, modifying, or installing the water softener system at

13   issue. (*Id.* at 5–6). On July 26, 2024, Defendant Hydro filed a Motion for Summary

14   Judgment to dismiss Nuvo's indemnity cross-claim (Doc. 79), which the Court granted on

15   December 13, 2024, relieving Defendant Hydro of liability (Doc. 91). Defendant Hydro

16   subsequently filed the present Motion for Attorneys' Fees and Expert Costs seeking

17   $385,279 in attorneys' fees and $234,721 in expert costs pursuant to Federal Rule of Civil

18   Procedure ("Rule") 54(d)(2), or alternatively, A.R.S. § 12-341.01. (Doc. 96). Defendant

19   Nuvo concedes that a fee award is permitted but argues that the requested award is

20   unreasonably excessive and thus must be sharply reduced. (Doc. 100).

21   **II.    DISCUSSION**

22        Defendant Hydro first argues that attorneys' fees are warranted under Italian law,

23   pursuant to Defendant Hydro and Nuvo's business contract that provided for the

24   applicability of Italian law in the event of a contract dispute between the parties. (Doc. 96

25   at 2). Alternatively, Defendant Hydro argues that it should receive attorneys' fees under

26   A.R.S. § 12-341.01, if the Court determines that Italian law does not apply. (*Id*.). Defendant

27   Nuvo argues that Arizona, not Italian, law is appropriate in this case, but that under either

28   scheme, a sharp reduction in the requested fees is warranted. (Doc. 100 at 1, 3). As a

1    threshold matter, the Court must determine whether Italian law, pursuant to the parties'

2    contractual agreement, or Arizona law governs recovery of attorneys' fees, before it can

3    determine whether the requested fees are reasonable under the appropriate scheme.

### a. Choice of Law

5    "In a diversity case, the district court must apply the choice-of-law rules of the state

6    in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon*

7    *Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Arizona's choice-of-law

8    rules, procedural matters are governed by the law of the forum, and substantive matters are

9    governed by "the law of the jurisdiction to which the court is referred by the choice-of-law

10   rules of the forum." *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 201 (Ariz. 1992)

11   (citation omitted). In Arizona, attorneys' fees are a substantive issue. *See Delevin v.*

12   *Holteen*, CV-12-00118-TUC-FRZ, 2016 WL 10721809, at *2 (D. Ariz. Apr. 26, 2016),

13   *aff'd*, 687 Fed. Appx. 532 (9th Cir. 2017) ("After review of relevant case law, the Court

14   determines that Arizona law labels attorneys' fees as substantive.").

15   "Arizona courts apply the Restatement (Second) of Conflict of Laws

16   ("Restatement") to determine the law governing multi-state (and presumably multi-

17   national) tort claims." *Magellan Real Estate Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1155

18   (D. Ariz. 2000) (citing *Bates v. Superior Court of Arizona*, 749 P.2d 1367, 1369 (Ariz.

19   1988)); *see also Kirkpatrick v. Hubman*, CV-21-01048-PHX-DJH, 2022 WL 1443762, at

20   *4 (D. Ariz. May 6, 2022). Under the Restatement, a contract's choice-of-law provision is

21   valid and enforceable if the contract issue brought by the parties is "one which the parties

22   could have resolved by an explicit provision in their agreement directed to that issue."

23   Restatement (Second) of Conflict of Laws § 187 (1971). If there is no explicit provision

24   directed to a particular issue, the chosen forum will still be applied unless either:

25       (a) the chosen state has no substantial relationship to the parties
         or the transaction and there is no other reasonable basis for the
26       parties' choice, or

27       (b) application of the law of the chosen state would be contrary
         to a fundamental policy of a state which has a materially
28       greater interest than the chosen state in the determination of the

3

1
2

> particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

3  Restatement (Second) of Conflict of Laws § 187(2) (1971). Here, the contract between

4  Defendants Hydro and Nuvo provides the following:

5  > Applicable Law and Settlement of Disputes:

6
7
8
9
10

> This Contract shall be governed and regulated by CISG (United Nations Convention on Contracts for the International Sale of Goods, Vienna 1980). Any questions not covered by CISG will be governed by the law of Italy. Any dispute may arise between Hydro Systems International NY and the Customer in connection with this Contract, its interpretation, performance, breach of termination shall be finally referred to the Court of Reggio Emilia – Italy." [Document 96-2, p. 6, citing Document 80-6, p. 145.]

11
12  (Docs. 96 at 6; 100 at 4). There is no explicit provision that speaks to the issue of attorneys'

13  fees. Thus, the Court must determine whether the chosen forum has a substantial

14  relationship to the parties or transaction and whether there is another reasonable basis for

15  the parties' choice. Here, Defendant Nuvo's crossclaim against Defendant Hydro was an

16  indemnity claim under state statute A.R.S. § 12-684 and Arizona common law. (Doc. 20

17  at 6). The indemnity claim did not involve Italian law or any interpretation of the

18  Defendants' business contract. The only apparent connection to Italy is that Defendant

19  Hydro, a company incorporated in Connecticut with its registered office in New York,

20  distributed water treatment products manufactured by an Italian company that were used

21  in Defendant Nuvo's products. (*See* Doc. 80 at 2–3). Defendant Nuvo is incorporated in

22  Utah, where it also has its principal place of business. (Doc. 11 at 2). The Court finds that

23  Italy does not have a substantial relationship with the parties, nor the underlying indemnity

24  dispute under Arizona law at issue in this case. Additionally, as the parties' attorneys are

25  located in the United States, and as Defendant Hydro seeks attorneys' fees based on its

26  Arizona statutory and common law claim, the Court is unaware of any other reasonable

27  basis for applying Italian law to determine an attorneys' fee award.

Moreover, the Court finds Defendant Nuvo's argument that the issues in this case

28

4

1    fall outside the scope of the choice-of-law provision persuasive. As noted, the choice-of-

2    law provision provides that the Contract shall be governed by the CISG or Italian law, and

3    that "[a]ny dispute . . . in connection with this Contract, its interpretation, performance

4    breach of termination shall be finally referred to the Court of Reggio Emilia – Italy." (Docs.

5    96 at 6; 100 at 4). As noted above, the underlying cause of action that Defendant Hydro

6    succeeded on was an indemnity claim under Arizona statutory and common law. (Doc. 20

7    at 6). While there is a causal link between the parties' contractual relationship and the

8    indemnity claim—namely, there would be no grounds for alleged indemnity if the

9    transaction of the water filter parts between the Defendants had not taken place—the claim

10   was not contractual in nature, nor it did require any interpretation of the parties' contract,

11   performance, or breach. To that end, the broader language of the provision—that "[a]ny

12   dispute . . . in connection with this Contract, its interpretation, performance, breach of

13   termination shall be finally referred to the Court of Reggio Emilia – Italy"—speaks to the

14   parties' chosen forum, not their choice-of-law. Thus, the Court is unconvinced that the

15   dispute falls within the scope of the provision.

16        Lastly, the Court is hesitant to apply the choice-of-law and forum provision when

17   Defendant Hydro is only now asserting that the provision is applicable. The provision

18   specifically provides that any disputes relating the contract shall be referred to the Court of

19   Reggio Emilia – Italy, yet neither party brought this provision to the Court's attention nor

20   sought its enforcement until after summary judgment. *Compare Banco de México v. Orient

21   Fisheries, Inc*., CV-07-07043-GAF-AJWX,, 2009 WL 10669948, at *6 (C.D. Cal. July 1,

22   2009) ("[C]ourts in the Ninth Circuit are not apt to find waiver of such provisions where,

23   as here, the choice-of-law issue arises before summary judgment and the Court has not

24   already ruled on the matter"), *with Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1267 (9th

25   Cir. 2006) (finding that the parties waived the choice-of-law provision because they

26   proceeded "throughout the district court and on appeal on the assumption that the franchise

27   agreement is governed by California law"). Nor did Defendant Hydro argue that Defendant

28   Nuvo should have brought indemnity claims under the CISG or Italian law; instead, it

1    litigated the Arizona statutory and common law claim without any mention of the parties'

2    choice-of-law agreement.

3        In sum, the Court finds that Arizona law—specifically, A.R.S. § 12-341.01—rather

4    than Italian law is appropriate for the assessment of attorneys' fees in this action.

5            **b.  A.R.S. § 12-341.01**

6        In Arizona, a "court may award attorney fees only when they are 'expressly

7    authorized by contract or statute,' and the party seeking fees must prove that the statute is

8    applicable and authorizes compensation in his or her case." *Dos Picos Land Ltd. P'ship v.*

9    *Pima Cnty.*, 240 P.3d 853, 855 (Ariz. Ct. App. 2010) (quoting *McMurray v. Dream Catcher*

10   *USA, Inc.*, 202 P.3d 536, 539–40 (Ariz. Ct. App. 2009)). A court may only award attorneys'

11   fees under A.R.S. § 12-341.01(A) for actions arising out of contract. *Morris v. Achen*

12   *Const. Co.*, 747 P.2d 1211, 1213 (Ariz. 1987). While "the mere existence of a contract

13   somewhere in the transaction" is insufficient to say a claim "arises out of contract," a

14   plaintiff may be awarded fees if there is a "requisite causal link between his claim and the

15   underlying contract." *Marcus v. Fox*, 723 P.2d 682, 684 (Ariz. 1986). Here, because

16   Defendant Nuvo's indemnity claim would not have existed but for the Defendants'

17   contractual business relationship, the Court finds that the claim sufficiently arises out of

18   contract. *See Rindlisbacher v. Steinway & Sons Inc*., CV-18-01131-PHX-MTL, 2021 WL

19   2434207, at \*4 (D. Ariz. May 26, 2021), *aff'd sub nom*. (9th Cir. Dec. 20, 2021) (finding

20   claim arose out of contract where the parties' relationship giving rise to claims "would not

21   have existed but for the parties' dealer agreements.").

22       To help guide a trial court's discretion under A.R.S. § 12-341.01(A), the Arizona

23   Supreme Court has proffered several factors, in addition to the meritorious nature of the

24   claim, that are "useful to assist the trial judge" in assessing the need for an award: (1) the

25   merits of the opposing party's claim or defense; (2) whether the litigation could have been

26   avoided; (3) whether awarding fees would "cause an extreme hardship" for the

27   unsuccessful party; (4) the extent to which the successful party prevailed; (5) whether the

28   legal question presented was novel; and (6) whether an award in one case would

1
2
3

"discourage other parties with tenable claims or defenses from litigating . . . for fear of incurring liability for substantial amounts of attorney's fees." *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985).

4
5
6
7
8
9
10
11

Here, the first factor, the merits of Defendant Nuvo's claim, weighs in favor of an award of attorneys' fees. Defendant Hydro successfully defeated Defendant Nuvo's indemnity claim at the summary judgment stage. (*See* Doc. 91). Defendant Nuvo failed to demonstrate that it sent Defendant Hydro a valid tender of defense or that Defendant Hydro received and subsequently denied that tender of defense. (*Id.* at 6). As Defendant Nuvo failed to provide evidence of a threshold element of its claim, the Court finds that Nuvo's claim had little merit. To that end, the fourth factor—the extent to which the successful party prevailed—also weighs in favor of an award.

12
13
14
15
16
17
18
19
20
21
22
23
24
25

The second element—whether litigation could have been avoided—also tips in favor of an award. Defendant Hydro submits that it sought to settle the cross-claim at a formal mediation on February 15, 2024, and Defendant Nuvo rejected the settlement attempt. (Doc. 96 at 12). The Court agrees with Defendant Hydro that the remaining factors weigh in favor of an award, as well: there is no evidence that awarding fees would cause an extreme hardship for Defendant Nuvo, and indeed, Defendant Nuvo concedes that fees are appropriate. (Doc. 100 at 1). The statutory indemnity claim at issue was not a novel legal question, nor does this Court have any reason to conclude that awarding fees here would discourage other parties from litigating indemnity claims, especially if they can sufficiently show the requisite elements under A.R.S. § 12-684. All told, the Court finds that it is appropriate to award Defendant Hydro attorneys' fees in this case. However, as A.R.S. § 12-341.01 does not provide for an award of expert costs, the Court finds it inappropriate to award Defendant Hydro's requested expert costs totaling $234,721. (Doc. 96 at 9).

26

### c. Reasonableness of Requested Fees

27
28

After concluding that awarding attorneys' fees is appropriate, the Court must next determine whether the requested fees are reasonable. *See Universal Services of Am. LP v.*

7

*Mazzon*, CV-23-00463-PHX-JAT, 2024 WL 4418331, at *4 (D. Ariz. Oct. 4, 2024). In conducting this analysis, the Court looks to (1) whether the attorneys' hourly rate is reasonable; and (2) whether the hours expended on the case are reasonable. *See generally id.*; *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931 (Ariz. Ct. App. 1983).

Here, Defendant Hydro seeks to recover a total of $339,165.00 in attorneys' fees for 821.6 hours of work. (Doc. 96-1 at 3). While Defendant Nuvo concedes that "[t]he specific hours rates for the timekeepers are not excessive," it argues that the amount of time spent on individual tasks is excessive and duplicative.[1] (Doc. 100 at 4). Specifically, Defendant Nuvo argues that Defendant Hydro's attorney bills are largely "block billed," preventing the Court from assessing the amount of time spent on each particular task; work was duplicated by Hydro's attorneys, Meister Seelig & Fein PLLC ("MSF"), and local counsel Quarles & Brady; and numerous items relate to Plaintiff's claims against Defendant Hydro, rather than Defendant Nuvo's cross-claim. (*Id.* at 4–5).

In analyzing the reasonableness of hours expended, the Court looks to the time that, for every item of service, "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest[.]" *Schweiger*, 673 P.2d at 932 (citation and quotations omitted). "Hours that are excessive, duplicative, or otherwise unnecessary may be excluded from the fees calculation." *Harris v. City of Phoenix*, CV-20-00078-PHX-DLR, 2024 WL 2956547, at *3 (D. Ariz. June 12, 2024) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1987)). Further, "[i]n order for the court to make a determination that the hours claimed are justified, the fee application must be in sufficient detail to enable the court to assess the reasonableness of the time incurred." *Schweiger*, 673 P.2d at 932. Thus, courts also reduce fees for block-billed entries, as block billing defies the Supreme Court's warning that attorneys' fees applicants "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," *Hensley*, 461 U.S. at 437, and also violates LRCiv 54.2(e). "An award may also be reduced for hours not 'reasonably

---

[1] Because Defendant Nuvo does not contest that the attorneys' hourly rates are reasonable, the Court will only analyze the reasonableness of time spent on billed tasks.

expended.'" *Travelers Indem. Co. v. Crown Corr, Inc.*, No. 2: CV-11-0965-PHX-JAT, 2012 WL 2798653, at *6 (D. Ariz. July 9, 2012) (quoting *Schweiger*, 673 P.2d at 932).

Here, the Court agrees with Defendant Nuvo that the requested fees must be reduced. As noted by Defendant Nuvo, numerous billing entries relate to Defendant Hydro's settlement with the Plaintiff rather than to crossclaims and are not recoverable from Defendant Nuvo. (Doc. 100 at 5). Specifically, 6.9 hours billed by Attorney ADP and 6.5 hours billed by Attorney LAH in March 2024 (*see* Doc. 96-2 at 2–4, 9) relate to the settlement with Plaintiff.[2] As such, the Court finds it appropriate to reduce the requested fees by $3,450 for the work conducted by ADP at a rate of $500 per hour and $1,950 for the work conducted by LAH at a rate of $300 per hour.

Further, a review of the attorneys' timesheets reveals egregious block billing by Defendant Hydro's counsel MSF. Some of the block-billed entries list multiple tasks that generally appear to be related to one another. *See United States v. Allergan*, *Inc*., 2023 WL 4754637, at *5 (C.D. Cal. July 24, 2023) (noting that "[c]ourts in the Ninth Circuit generally reduce entries exceeding one hour" but that "[b]lock-billed entries are permissible where entries contain sufficient specificity for courts to discern whether the time spent performing tasks was reasonable"). However, the majority of the block-billed entries seek to recover for various unrelated tasks and log several hours of work billed in a single entry consisting of unrelated tasks. After analyzing the more than 100 pages of timesheets, the Court has identified numerous entries that were impermissibly block-billed such that the Court cannot discern whether the time spent performing the tasks was reasonable.

Additionally, when time entries are block billed and contain both clerical and nonclerical tasks, the Court must cut the entire entry. *Hensley*, 461 U.S. at 433. ("Where the documentation of hours is inadequate, the district court may reduce the award

---

[2] Some of these entries include tasks related to the cross-claim dispute in addition to Plaintiff's claims. However, as the entries are block-billed, it is impossible for this Court to discern how much time was spent on the cross-claim tasks versus those related to Plaintiff's claims, and as such, the Court will strike these entries in their entirety.

9

1    accordingly."). Defendant Nuvo challenges various entries that bill for "tasks which appear

2    to be appropriate for paralegal or clerical staff such as communications with vendors and

3    forwarding documents" and "tasks appropriate for a paralegal such as production of

4    documents and continued communications with e-discovery vendors." (Doc. 100 at 6–7).

5    Attorneys' fees are not awarded for clerical tasks. They should be "subsumed in firm

6    overhead rather than billed at paralegal rates." *McNamara v. Infusion Software, Inc.*, No.

7    CV-17-04026-PHX-SPL, 2020 WL 4921984, at *3 (D. Ariz. Aug. 21, 2020) (quoting

8    *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)). Clerical tasks may include "filing

9    and scheduling, calendaring activities, and bates labeling documents." *eMove Inc. v. SMD*

10   *Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 4856276, at *7 (D. Ariz. Oct. 11,

11   2012), *aff'd*, 569 F. App'x 527 (9th Cir. 2014). Here, several time entries refer to the

12   organization of binders and documents in preparation of depositions, scheduling meetings

13   and depositions, as well as coordinating with court staff, eDiscovery vendors, and

14   interpreters. These are clerical tasks for which Defendant Hydro may not bill. Specifically,

15   the Court identifies 33.5 hours of work billed by attorney LAH on the May 7, 2024 bill

16   (Doc. 96-2 at 10, 15), 27.5 hours of work billed by LAH on the June 13, 2024 bill (*id.* at

17   26–27), and 7 hours on the July 12, 2024 bill (*id.* at 34–35) that must be eliminated, as

18   these time entries include both clerical and non-clerical tasks. Similarly, the Court

19   identifies 24.6 hours of LAH's work that include clerical tasks on the August 21, 2024 bill

20   (*id.* at 44), 3.7 hours on the September 20, 2024 bill (*id.* at 58), 6.1 hours on the October

21   15, 2025 bill (*id.* at 68), and 0.4 hours on the November 14, 2024 bill (*id.* at 73). At LAH's

22   rate of $300 per hour, elimination of these entries totaling 102.8 hours results in a $30,840

23   reduction in the fee award.

24       With respect to block-billed entries that do not contain clerical tasks, from the April

25   4, 2024 bill, the Court finds that Attorney ADP block-billed entries on March 11 and 14,

26   2024, totaling 8 hours of work (Doc. 96-2 at 3) and Attorney LAH submitted several block

27   billed entries for work conducted on March 11, 12, and 14 totaling 11.7 hours of work. (*Id.*

28   at 3–4). On the May 7, 2024 bill, the Court finds that nearly every entry is block billed such

1    that the Court cannot determine if the time spent on the various tasks listed per entry is

2    reasonable. In particular, 36.3 hours of ADP's work and 61.7 hours of LAH's work for the

3    month of April 2024 is impermissibly block billed. (*Id.* at 9–10, 15–16). The trend

4    continues for MSF's June 13, 2024 invoice: ADP block billed 5.3 hours of work and LAH

5    block billed 15.6 hours of work. (*Id.* at 25–27). From the July 12, 2024 invoice, the Court

6    identifies 24.8 hours of ADP's work, 24.7 hours of LAH's work, and 9.7 hours of ADK's

7    work that were block billed. (*Id.* at 35–37). On the August 21, 2024 invoice, ADP block

8    billed 37.4 hours and LAH block billed 51.2 hours. (*Id.* at 44–46). On the September 20,

9    2024 bill, the Court finds that ADP block billed only one entry for 7.10 hours. (Doc. 96-2

10   at 58). On the October 15, 2024 bill, ADP block billed a 7.5-hour entry of work (*Id.* at 64)

11   and LAH submitted one block billed entry totaling 4.8 hours of work (*Id.* at 68). In sum,

12   Defendant Hydro seeks to recover $63,200 for 126.4 hours of ADP's work that was block

13   billed at a rate of $500 per hour; $50,910 for 169.7 hours of LAH's block billed entries at

14   a rate of $300 per hour; and $4,365 for 9.7 hours of ADK's block billed entries at a rate of

15   $450 per hour. (Doc. 96-1 at 3). Defendant Hydro concedes that a 20 percent reduction of

16   the block billed entries is appropriate. (Doc. 102 at 6). The Court finds this is in line with

17   other rulings in this district. *See Caggiano v. Comm'r of Soc. Sec. Admin.*, CV-19-05522-

18   PHX-MTL, 2021 WL 2779499, at *4 (D. Ariz. July 2, 2021) (reducing block billed hours

19   by 20 percent); *Stud v. Cains*, CV-15-01045-PHX-DJH, 2022 WL 951056, at *7 (D. Ariz.

20   Mar. 30, 2022) (reducing block billed entries by 25 percent). Thus, the Court will reduce

21   the block billed entries (totaling $118,475) by 20 percent ($23,695).

22         Defendant Nuvo repeatedly argues that Hydro's attorneys' research was excessive

23   and duplicative. (Doc. 100 at 4). However, beyond cursory allegations that the research

24   was excessive and extensive for "simple" issues, Defendant Nuvo does not explain how

25   specific entries are unreasonable. Moreover, while some of the issues involved in this case

26   were relatively simple, other issues—and the underlying facts related to the water softener

27   system's defects—were much more complicated. Accordingly, the Court finds the hours

28   expended on research and corresponding fees sought are reasonable.

1    Additionally, Defendant Nuvo argues that several of the time entries billed by local

2    counsel and MSG are duplicative of each other. (Doc. 100 at 8–9). While local and lead

3    counsel did in fact conduct research on some of the same issues, the Court finds that such

4    duplicative efforts are not excessive and do not warrant a reduction. It is reasonable that

5    various attorneys assigned would need to share a common understanding of the underlying

6    legal issues and facts of the case and would need to attend the same meetings, in the event

7    their assistance on a specific issue was needed or that such underlying knowledge of the

8    issue was foundational to working on other issues in the case. *See Democratic Party of*

9    *Wash. State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004) ("Participation of more than

10   one attorney does not necessarily amount to unnecessary duplication of effort.").

11   Moreover, courts in this district have recognized that edits and reviews of another

12   attorneys' draft documents do not constitute unnecessary, duplicative work. *Fultz v.*

13   *Berryhill*, CV17-03122-PHX-DGC, 2019 WL 160601, at *3 (D. Ariz. Jan. 10, 2019).

14   Defendant Nuvo cites no legal authority to support its assertion that communications with

15   co-counsel are not recoverable. As such, the Court finds it inappropriate to reduce the fees

16   Defendant Nuvo alleges are duplicative.

17   Defendant Nuvo further directs the Court's attention to time entries on local

18   counsel's August 5, 2024 invoice that reference a "Texas Answer filing." (Doc. 96-2 at

19   103; Doc. 100 at 9). Specifically, three entries billed by attorney J. Gardener on July 10,

20   16, and 17, 2024, refer to a "Texas Answer" assignment (Doc. 96-2 at 103–04), which is

21   apparently unrelated to this action. Attached to Defendant Hydro's Reply is a transcript of

22   a deposition with Defendant Nuvo's FRCP 30(b)(6) designee, which at one point refers to

23   an action in Texas in which both defendants in the present case were also parties to. (Doc.

24   102-1 at 99). However, Defendant Hydro does not address these Texas-related entries in

25   its Reply, explain if they are related to this other action, or argue that this work was relevant

26   and necessary to the present case. As such, the Court will strike these entries and reduce

27   the fee award by $526.50. (Doc. 96-2 at 103–04).

28   Lastly, Defendant Nuvo argues that the $2,750 billed for "Law Clerk 3" for emails

1    and discussion of a spoliation memo should be struck, as the qualifications and identity of

2    the timekeeper are not provided and as the work does not appear to relate to issues in this

3    case. (Doc. 100 at 6–7). While fees for the services of law clerks are recoverable, the Court

4    agrees with Defendant Nuvo that they are inappropriate here. *See generally Richards v.*

5    *Del Webb Communities, Inc*., CV-11-368-PHX-SMM, 2013 WL 5445440, at \*2 (D. Ariz.

6    Sept. 30, 2013) ("Fees for the services of legal assistants and law clerks are recoverable as

7    attorney's fees because legal assistants and law clerks have legal training and knowledge

8    that can contribute to the attorney's preparation of a legal matter."). The Court is unable to

9    assess whether the rate charged for Law Clerk 3's work is reasonable in light of the absence

10    of information about the individual's training and experience. While Defendant Hydro

11    argues in its Reply that the research was necessary to this litigation (Doc. 102 at 9), it makes

12    no argument as to Defendant Nuvo's challenge to Law Clerk 3's credentials and rate. *See,*

13    *e.g., M.S. v. Cty of Ventura*, No. CV 16-03084-BRO (RAOx), 2017 WL 10434015, at \*24

14    n.20 (C.D. Cal. Mar. 7, 2017) ("Failure to respond to the merits of one party's argument

15    constitutes a concession of that argument."); *see also Mendoza v. City of Peoria*, No. CV-

16    13-00258-PHX-DJH, 2015 WL 13239816, at \*4 (D. Ariz. July 31, 2015) (construing

17    Plaintiff's "silence" on an argument as a concession). Accordingly, the Court will strike

18    these entries and reduce the fee award by $2,750.

19    **III.    CONCLUSION**

20        All told, the Court finds an award of attorneys' fees is appropriate pursuant to A.R.S.

21    § 12-341.01(A). However, after a review of counsel's timesheets, the Court finds that

22    counsel engaged in impermissible billing practices that warrant a reduction in fees.

23    Specifically, the Court concludes that timesheet entries that block-billed legal and clerical

24    tasks and entries that referred to matters unexplained and apparently unrelated to the claims

25    between Defendants Nuvo and Hydro must be eliminated in their entirety, which warrants

26    a $39,516.50 reduction in fees as set forth in this order. The Court finds it appropriate to

27    reduce block-billed entries that do not include clerical tasks by 20 percent, which results in

28    a $23,695.00 reduction in fees. Subtracting this from Defendant Hydro's requested

$385,279.00, the Court finds a fee award of $322,067.50 is appropriate. Defendant Hydro will not be awarded costs.

Accordingly,

**IT IS ORDERED** that Defendant Hydro Systems International, Inc.'s Motion for Attorneys' Fees and Expert Costs against Co-Defendant Nuvo Residential LLC (Doc. 96) is **granted in part as modified and denied in part**.

**IT IS FURTHER ORDERED** that the Court awards Hydro Systems International, Inc. $322,067.50 in reasonable attorneys' fees.

**IT IS FURTHER ORDERED** that Defendant Hydro Systems International, Inc.'s request for expert costs pursuant to A.R.S. § 12-341.01 is **denied**.

Dated this 20th day of August, 2025.

Honorable Steven P. Logan
United States District Judge

14